[No. 20209.   In Bank. — June 27, 1887.]

## THE PEOPLE, RESPONDENT, v. JOHN KERNAGHAN, APPELLANT.

CRIMINAL LAW — MURDER — MANSLAUGHTER — INSTRUCTIONS. — In a prosecution for murder, certain instructions on the subject of reasonable doubt, and as to the distinguishing features between murder and manslaughter, *held*, not erroneous.

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of Justice McFarland.

LXXII. CAL.—39

*Robert Ferral, Clarence Gray,* and *Garret W. McEnerney,* for Appellant.

*Attorney-General. Johnson,* for Respondent.

McFARLAND, J.—The jury found the appellant guilty of murder in the first degree, and assigned the punishment of death. He now contends for a reversal of the judgment upon the grounds that the court erroneously instructed the jury,. first, as to reasonable doubt; second, as to manslaughter; third, as to excusable homicide; and fourth, as to insanity. The difficulties in this case arise mostly out of the attempt of the learned judge of the court below to employ new and unusual forms of speech to state old principles, the proper expression of which has long since settled into well-considered and well-chosen language. For instance, the definition—or rather the description—of "reasonable doubt" given by Chief Justice Shaw in the Webster case has been adopted by this court and by nearly all American courts, as a statement of that mental condition sufficiently accurate. Therefore, where a *nisi prius* court had given the language used by Chief Justice Shaw, and had confined itself to such language, we would be slow to reverse the case, although other instructions upon the subject not objectionable had been asked by defendant and had been refused. But in the case at bar, the court, in addition to a correct statement of the law concerning reasonable doubt, taken substantially from the Webster case, used other expressions which are objectionable; and the question to be determined is, Does it appear from the whole charge considered as an entirety that the defendant was not injured by that part of it which, considered by itself, might be admitted to be erroneous. (*People* v. *Doyell,* 48 Cal. 93.) For the solemn verdict of twelve men rendered upon their oaths will not be set aside for a mere "slip of the judge" in charging them, when no prejudicial injury was done thereby.

The first objection to the charge on this subject is to the following language which constitutes the latter clause of a sentence: "Your minds should be able to rest reasonably satisfied of the guilt of the defendant before a verdict of that character is given." "Reasonably satisfied" as here used is undoubtedly an unfortunate expression. If it had stood alone, it might possibly have been understood by the jury as meaning "satisfied by a preponderance of evidence." But how could that be when the court had repeatedly told them that they must be convinced of defendant's guilt beyond a reasonable doubt, and when, in a former part of the very sentence in which the objectionable words occur, it had said that "the probability of guilt outweighing the probability of innocence" was not sufficient to warrant a conviction. Keeping the whole charge in view, the jury could not have understood the words "reasonably satisfied" other than as an equivalent of the phrase "satisfied beyond a reasonable doubt." We do not think, therefore, that this objection to the charge should work a reversal of the judgment.

The other main objection on this point is directed to the following language, which constitutes the first clause of a sentence: "On the other hand, however, mere probabilities of innocence, or doubts, however reasonable, *which beset some minds on all occasions,* should not prevent such a verdict." To this language, standing by itself, we can attach no definite meaning, and it is not to be presumed that the jury could, or that they did, attach a meaning to it prejudicial to defendant. The latter part of the sentence is as follows: "But if the whole testimony in the case produces in your minds this degree of conviction of the guilt of the defendant, — that is, satisfies you beyond a reasonable doubt of his guilt, it is your duty to say so by your verdict; if it does not, it is your duty to say not guilty."

It must be remembered that the court in other parts

of its charge had fully and correctly stated the law on the subject of reasonable doubt. Among other things, having said that the doubt was not sufficient if merely "chimerical or based on groundless conjectures," it correctly defined reasonable doubt as "that state of the case which after an entire consideration and comparison of all the evidence leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge." The practical administration of justice should not be allowed to depend too much upon nice questions in philology. In a case like the one at bar, the real question should be, Was the correct exposition of the law given in the main body of the charge so qualified by the injudicious expressions complained of as to impair its truthfulness as a whole ? We think that this question put in this case upon the point under discussion should be answered in the negative; although, of course, we cannot commend all that was said in the instructions.

The charge of the court on the subject of manslaughter is correct, with the exception of the use of the words "not intentional." After giving a proper definition of manslaughter, and saying that "the distinguishing feature between murder and manslaughter is the presence or absence of malice," the court adds as follows: "In other words, gentlemen, manslaughter is a homicide not excusable, not justifiable, but yet not intentional." The latter part of this language is, in one sense, inconsistent with former decisions of this court. It has been held by some eminent jurists that the sudden, irresistible passion, overcoming the reason and deadening the conscience to the voice of humanity, which reduces unlawful homicide to manslaughter, is inconsistent with the notion of intention. And while this court has said in *People* v. *Freel*, 48 Cal. 436, that the intent to kill may be present in manslaughter, yet in the same case it said that "the law out of forbearance for the weakness of

human nature will *disregard the actual intent*." In *People v. Doyell*, 48 Cal. 96, this court uses the same expression; and in discussing the distinction between murder in the second degree and manslaughter says: "In the former cases the slayer is presumed to be actuated by an intent which may not exist; in the latter, out of forbearance for the weakness of human nature, the slayer *is presumed not to be actuated by an intent to kill*, although such intent may, in fact, exist." Now, the distinction between no intent at all and an intent which the law " disregards," and by which the slayer is " presumed not to be actuated," is a very slight basis for the reversal of a judgment. And the distinction becomes less apparent when we consider that one of the definitions of malice given in section 7 of the Penal Code is, "*An intent* to do a wrongful act established either by proof or presumption of law "; and that in section 188 practically the same definition is given, although in dividing malice into express and implied, the former is described as existing when the " intention " to kill is " manifested " by direct proof, and in the latter as resting on a " presumption of law."

Indeed, the primary and generally received legal definition of malice includes the notion of intent. Some of the common definitions are "the doing of a wrongful act *intentionally* without just cause or excuse"; a " *conscious* violation of law"; " the *intent* from which flows any unlawful and injurious act committed without legal justification." (2 Bouv. Law Dict., p. 33, and cases there cited.) It is difficult, therefore, to reconcile the absence of malice with the presence of an intent to kill; and we would hesitate to set aside a verdict on such a delicate distinction, even in a case where it was apparent that the jury may have had doubts which involved the boundary line between manslaughter and murder in the second degree. But in the case at bar there were evidently no such doubts. The evidence tending to reduce the crime to manslaughter was of the very slight-

est character; and the jury, passing over murder in the second degree, not only found the defendant guilty of murder in the first degree, but imposed the extreme penalty of death, when it was in their discretion to assign the punishment of imprisonment for life. Under these circumstances, we are of the opinion that the judgment should not be reversed for the alleged error here under discussion.

With respect to the charge of the court on the subjects of excusable homicide and insanity, we deem it necessary to say only that in our opinion it was not erroneous.

This court has frequently warned the judges of trial courts against the dangers of lengthy and ill-considered instructions to juries in criminal cases. We here repeat the admonition,—with little hope, however, that it will be heeded.

Judgment and order denying a new trial affirmed.

PATERSON, J., concurred.

SEARLS, C. J., and McKINSTRY, J., concurred in the judgment.

TEMPLE, J., dissenting. — I dissent. I think the judgment should be reversed.

I think there was harmful error in the instruction in regard to reasonable doubt. It is true, the jury were also fully and correctly instructed upon this subject; that is, the other instructions given would have been correct if they had not been qualified by the erroneous one complained of. I see no possible purpose in the instruction, unless it was intended to direct the jury as to the proper understanding of those given at the request of defendant. It must have been understood, and it was probably intended it should be, as qualifying the other instructions upon the same subject.

For instance, the jury were told that they must be satisfied of the guilt of the defendant beyond a reason-

able doubt; that they must have an abiding conviction to a moral certainty of his guilt, etc., but also that such degree of conviction was consistent with a well-founded doubt and with a *mere* probability of innocence, however reasonable, and that after all to be satisfied beyond a reasonable doubt only meant that they should be reasonably satisfied; that is, that the degree of certainty was only that required in civil cases, which merely consists in ascertaining the preponderance of evidence, — was in fact something less, — was even consistent with a reasonable probability of innocence.

I readily admit that a case should not be reversed because the judge in some part of his charge has omitted a needed qualification of some proposition, if it has been elsewhere supplied, and we can see that on the whole the jury has not been misled. Here, however, I am unable to resist the impression that the judge intended to lessen the effect of the forcible though correct statement of the doctrine of reasonable doubt in the instruction asked for, and that it probably did have that effect. I presume the judge used the word "probability" of innocence by inadvertence, intending to say a "mere *possibility* of innocence." The judge's probable intentions, however, do not cure the error.

I do not think there was harmful error in the instruction in regard to manslaughter. The jury were told manslaughter is a homicide, not excusable, not justifiable, but yet not intentional.

Other instructions fully and correctly defining manslaughter were also given. Applying the erroneous definition to the true one, as a qualification, they were told voluntary manslaughter is the unlawful killing of a human being without malice, upon a sudden quarrel or heat of passion, but is unintentional.

Now if this definition involves a contradiction in terms, it is still but a harmless one. It simply tells the jury that an unlawful homicide, without malice, in a

sudden heat of passion, is not intentional. It creates no confusion, and leaves no doubt as to the nature of the acts constituting voluntary manslaughter.

But whether it can properly be said that no homicide is intentional, when committed without malice under an irresistible passion caused by a sudden and sufficient provocation, when there has not been time for reason to resume its sway, is merely a question as to the use of words. If there had been sufficient time for the voice of reason and humanity to be heard, the killing will be attributed to malice. Does that not mean that the provocation, the irresistible passion, and the rapidity with which the act follows, precludes the idea of intention? that such intent, if it exist, has not been realized in the judging mind or recognized by the conscience, and therefore does not, in law or reason, amount to an intent?

The definition of malice, in the Penal Code, would seem to favor this view. (Pen. Code, sec. 7.) One of the definitions of malice there given is, " an intent to do a wrongful act." If the killing be unlawful and intentional, it is difficult to comprehend how it can be otherwise than malicious. There certainly would be an intent to do a wrongful act.

At all events, it seems to me that it is merely a choice between different forms of expression, whether we say that voluntary manslaughter is intentional, but because of the irresistible passion, upon a sufficient provocation, and the lack of time for reflection, out of compassion for the weakness of human nature, the law attributes the act to the passion, or, that the sudden heat of passion is followed so quickly by the act as to preclude the idea of intention. The essential elements of the crime are the same.

I do not think the case should be reversed for that portion of the charge in regard to emotional insanity.

To my mind, however, it resembles more the testi-

mony of a medical expert than the charge of a court. It is not a statement of the doctrine of the case of *People* v. *Hoin*, 62 Cal. 120. That case merely says irresistible impulse, *if it exists*, does not constitute the insanity, which is a legal defense. The court there left the question whether it could exist to be determined as a fact from evidence. Here, the court announces as a fact that one cannot be entirely sane a moment before and after the criminal act, and insane at the time. It is also announced that there may be a morbid state of passion which would unsettle the moral system, while the mental faculties remain in a normal and healthy condition. That may all be true, but it is not matter of law.

I think the judgment should be reversed for the reasons given.

THORNTON, J., dissenting. — I dissent. We have examined the charge of the court upon the question of reasonable doubt, and are of opinion that it contains nothing which calls for a reversal. The direction on this point must be considered in its entirety, and if the whole charge, taken together, without giving a strained meaning to any portion of the language employed, harmonizes and fairly and correctly presents the law bearing on the point, the judgment should not be disturbed because some of the words of the charge, taken by themselves, do not fully present the rule which is to be gathered from the whole text of the direction. (*People* v. *Doyell*, 48 Cal. 93.) In this view, we find nothing contradictory in the direction given as to reasonable doubt.

The charge on the point above referred to is certainly, as to some expressions used in it, obnoxious to criticism. For instance, the learned judge of the trial court told the jury: " It is not every possible doubt, however slight or *however well founded*, which should prevent a verdict of guilty, but a doubt, to have that effect, must be a reasonable one, arising from the evidence in the case; that

is, it must be founded in reason, arising out of the evidence which leaves a rational uncertainty as to his guilt, which nothing else in the case removes." Then follows this language: " The degree of conviction in any mind of the guilt of the defendant should be something more than the mere probability of guilt outweighing the probability of innocence; your minds should be able to rest *reasonably satisfied* of the guilt of the defendant before a verdict of that character is given."

The court further said: " On the other hand, however, mere probabilities of innocence, or doubts, however reasonable, which beset some minds on all occasions, should not prevent such a verdict; but if the whole testimony in the case produces in your minds this degree of conviction of the guilt of the defendant, — that is, satisfies you beyond a reasonable doubt of his guilt, it is your duty to say so by your verdict. If it does not, it is your duty to say not guilty."

What is meant by a well-founded doubt, which should prevent a verdict of guilty, taken by itself, would present a singular question of law. But it is clearly explained by the clause which immediately follows. So also the words " doubts, however reasonable," are clearly explained by the words which follow.

The words "reasonably satisfied," conceding that they by themselves define only a preponderance of evidence, and that the jury were told that they could rest a verdict of guilty on such preponderance, such a gloss is removed by the language which follows and the clear direction that reasonable doubt "is that state of the case which, after an entire consideration and comparison of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction to a moral certainty of the truth of the charge."

It seems to us that the learned judge of the trial court used the expressions "doubts . . . . well founded," and "doubts, however reasonable," with reference to doubts

which might arise on a consideration of the evidence less than the whole,—on a consideration which might be called *partial*, and not embracing the testimony in the case in its entirety.

While we will not reverse for the expressions in the charge above given, and hold that the charge as a whole is not erroneous on the point of reasonable doubt, we feel bound to say that we cannot commend it. And we think it proper to admonish the judges of the trial courts to follow the beaten paths of the law, to instruct the jury in the formula of words well settled in this court, and refrain from the use of expressions in their directions which present questions on which appeals will be generally taken and may sometimes demand a reversal of a judgment. It is safe to travel along the beaten paths,—*ire super antiquas vias.* It is dangerous to attempt to hew out a new one when the old way lies patent before one. We are not convinced as yet that the directions as to reasonable doubt sanctioned by this and other courts can be improved, and we feel an abiding conviction beyond a reasonable doubt that this attempt to improve on the approved directions in this case was not a success.

It is contended that the court erred in giving the direction which follows:—

"Manslaughter is the unlawful killing of a human being without malice; it is of two kinds: 1. Voluntary, upon a sudden quarrel or heat of passion; 2. Involuntary in the commission of an unlawful act, not amounting to a felony, or in the commission of a lawful act which might produce death, in an unlawful manner or without due caution or circumspection. The distinguishing feature between murder and manslaughter is the presence or absence of malice. If malice enters into the unlawful act by which death is caused, it is murder, but if malice is wanting, it is manslaughter. In other words, gentlemen, manslaughter is a homicide not excusable, not justifiable, but yet not intentional."

The court having thus given the definition of manslaughter in its phases as *voluntary* and *involuntary*, concludes on this point by telling the jury that "manslaughter is a homicide *not excusable, not justifiable, but yet not intentional.*"

How the learned judge of the court below could say to the jury that manslaughter, a species of homicide, could be *voluntary*, and if intentional was not manslaughter, is a question defying solution. This latter direction predicatory of manslaughter that to constitute it the homicide must be unintentional, is in direct contradiction of the former portion of the direction that it could be voluntary, and contrary to the definition of it given by the code, which is quoted in the first part of the direction (Pen. Code, sec. 192), which is as follows: "Manslaughter is the unlawful killing of a human being without malice," and one kind of it may be "voluntary, upon a sudden quarrel or heat of passion." To say that manslaughter must be "not intentional," is in effect to say that it cannot be voluntary. It cannot be *unintentional* if it is voluntary. A voluntary homicide upon a sudden quarrel or heat of passion is manslaughter. It must be with a will or volition to kill. When there is volition, there is intention. To predicate of volition that it is unintentional is to say that volition must be involuntary, i. e., *without volition,* which is in terms a plain contradiction and a solecism. This court has so held in *People* v. *Freel,* 48 Cal. 436, cited approvingly in *People* v. *Crowey,* 56 Cal. 42, 43.

In Freel's case, the question arose on a direction to the jury in these words:—

"You will also observe that the difference between murder and manslaughter is, that in manslaughter there is no intention whatever either to kill or do bodily harm. The killing is the unintentional result of a sudden heat of passion, or of an unlawful act committed without due caution or circumspection."

Of this direction the court said:—

"This is clearly erroneous. Whether the homicide amounts to murder or manslaughter merely does not depend upon the presence or absence of the intent to kill. In either case there may be a present intention to kill at the moment of the commission of the act. But when the mortal blow is struck in the heat of passion, excited by a quarrel, sudden, and of sufficient violence to amount to adequate provocation, the law, out of forbearance for the weakness of human nature, will disregard the actual intent, and will reduce the offense to manslaughter. In such case, although the intent to kill exists, it is not that deliberate and malicious intent which is an essential element in the crime of murder." (48 Cal. 437.)

But it is said that, conceding the instruction to be erroneous, the defendant was not injured by it, as the jury found him guilty of murder.

Injury is always presumed from error, and it must be held that injury was done defendant, unless the record shows that it was not. That is not the case here. Though there is evidence of threats and of deliberation, still there is testimony which, in our judgment, calls for a proper definition of manslaughter. The testimony shows that defendant ordered the person slain out of his house, and that she refused to go; that he took hold of her to put her out, when she seized a hammer which he had in his pocket and struck him on the head with it. Under these circumstances, we are of opinion that the defendant had a right to have the offense of manslaughter correctly defined to the jury, which was not done here.

This is no merely technical point. It is one of substantial importance. Indeed, it may have caused the conviction of the defendant, for the instruction given was equivalent to a direction to the jury that if the killing was intentionally done, it was murder. And as the evidence showed without a doubt the blows were inten-

tionally given from which death resulted, the jury, if they obeyed the instruction, could have found no other verdict than that which affirmed that defendant was guilty of murder.

The court did not err in using this language to the jury in the connection in which it was used,— "but the killing is not excusable, if it was apparent to the party killing at the time the act was committed, or would have been apparent to a reasonable man in his place and situation and stead, the crime resisted could have been prevented or arrested by other means."

The words just quoted were employed to qualify the following, which preceded them: " The law authorizes the killing of one who is in the act of committing a forcible felony, and even one who appears to be in the act of doing so, for the purpose of prevention and not punishment, but the killing is not punishment."

It is manifest here that the direction intended was in relation to the killing of a person to prevent his committing a crime, and in that view the language objected to was not objectionable.

A point is raised in regard to some of the language used in the charge in regard to the defense of insanity. The law as affirmed in it was correctly laid down and explained in accordance with the ruling of this court in *People* v. *Hoin*, 62 Cal. 120. The rule of the case cited will be adhered to by this court, and should be by all courts. There was nothing objectionable in the language used by the court in regard to " what is called emotional insanity, which begins on the eve of the criminal act, and leaves off and ends when it is consummated." The court said, and said properly, the law rejects the doctrine of emotional insanity, using the words quoted above. This is correct. The law does reject it, and casts it out of the temple of justice as one which should not be allowed to enter its precincts. It should ever be a stranger there. The law condemns

such a defense as founded in fraud and folly, and when permitted, is always used as a pretext by weak-minded jurors, unmindful of their oaths, to render a verdict of acquittal in cases where guilt has been incurred.

For the error of the court above pointed out, the judgment and orders should be reversed, and the cause remanded, and a new trial ordered.