[No. S062453. June 2, 2000.]

THE PEOPLE, Plaintiff and Respondent, v.
GEORGE JOHN BLAKELEY, Defendant and Appellant.

**COUNSEL**

Carol Strickman, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Joan Killeen and Raymond A. Cardozo, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KENNARD, J.**—In the companion case of *People v. Lasko* (2000) 23 Cal.4th 101 [96 Cal.Rptr.2d 441, 999 P.2d 666], we hold that a defendant who, with conscious disregard for life and the knowledge that such conduct endangers the life of another, unintentionally but unlawfully kills in a sudden quarrel or the heat of passion is guilty only of voluntary manslaughter rather than murder. Here, we hold in a case of first impression that voluntary manslaughter is also committed when a defendant, acting with conscious disregard for life and the knowledge that the conduct is life-endangering, unintentionally but unlawfully kills while having an unreasonable but good faith belief in the need to act in self-defense.

### I

On October 25, 1994, defendant George John Blakeley and his friend, David Fraire, spent the early afternoon drinking brandy in a park in Vallejo, California. They then went to defendant's home. Also there were Steven Blakeley (defendant's brother), Tony Santiago, and Lionel Vallo (a friend of Santiago's). Fraire passed around bottles of beer, and Vallo bought $20 worth of methamphetamine from defendant.

Vallo, who had been drinking, asked about the quality of the methamphetamine, saying that some methamphetamine he had recently bought from Santiago had been "bunk." Santiago told Vallo, "fuck you," and Vallo replied, "fuck you." Defendant said to both Santiago and Vallo, "shut the fuck up"; Vallo told defendant, "you shut the fuck up."

Defendant told Vallo to leave the house. Vallo, who was six feet tall and weighed 205 pounds, swung a beer bottle at defendant, who was five feet five inches tall and weighed 140 pounds, but missed. Defendant then hit Vallo in the head with an unopened bottle of beer. The bottle shattered,

cutting Vallo's cheek. After throwing a beer bottle at defendant, but missing him, Vallo charged at defendant. Defendant drew a large knife from a sheath on his belt and a struggle ensued. Santiago pulled Vallo off defendant. Vallo was bleeding heavily from a stab wound to the chest. Fraire told defendant "let's go," and defendant, weeping, drove Fraire home.

After telling his friend Vallo, "You dying, ain't nothing I could do, you got it to the heart," Santiago asked Steven Blakeley (who had been out of the room during the fight) to "call 911" and then left. The police and paramedics soon arrived but were unable to save Vallo, who died shortly thereafter from a single stab wound to the heart. Defendant fled, eventually turning up at his uncle's home in San Bernardino. His uncle called the police.

At trial, eyewitness accounts of the stabbing differed. Vallo's friend Santiago testified defendant had made a motion "like an uppercut" with the knife as Vallo charged him, and Vallo almost immediately went limp, falling on top of defendant. Fraire, defendant's friend, testified that after Vallo attacked defendant the two struggled for "half a minute or so"; he did not see defendant stab Vallo. Defendant, who testified on his own behalf, claimed he drew his knife to defend himself when Vallo charged him, that the two of them fought and went down on the floor, and that Vallo apparently impaled himself on the knife during the struggle. He did not realize Vallo had been stabbed until after the fight was over.

The trial court instructed the jury on the charged crime of murder as well as the lesser included offenses of voluntary and involuntary manslaughter. As to voluntary manslaughter, the trial court explained: "Every person who unlawfully kills another human being without malice aforethought *but with an intent to kill* is guilty of voluntary manslaughter . . . . There is no malice aforethought if the killing occurred in the honest but unreasonable belief in the necessity to defend oneself against imminent peril to life or great bodily injury." (Italics added.) The court refused to give defendant's requested instruction that a killing is involuntary manslaughter when the killer, acting in an unreasonable but good faith belief in the necessity of self-defense, *unintentionally* causes the victim's death.[1] Instead, the court gave the jury

---

[1]Defendant's requested instruction read: "Every person who unlawfully kills a human being without malice aforethought and without an intent to kill is guilty of the crime of involuntary manslaughter in violation of Penal Code § 192(b). [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A human being was killed; and [¶] 2. The killing was unlawful. [¶] A killing is unlawful within the meaning of this instruction when the accused actually but unreasonably believes in the necessity to defend himself and, having such mental state, unintentionally causes the death of a human being."

CALJIC No. 8.45, the standard instruction on involuntary manslaughter.[2] The jury convicted defendant of voluntary manslaughter.

The Court of Appeal affirmed the conviction. The court reasoned: "[Unreasonable self-defense] has no special bearing on the crime of involuntary manslaughter. It neither allows a conviction of this crime, nor prevents one." Because "[t]here was no instruction . . . that prevented the jury from considering involuntary manslaughter," the Court of Appeal said, the trial court did not have to give defendant's requested instruction. We granted review.

## II

■ As we did in the companion case of *People v. Lasko, supra,* 23 Cal.4th 101, we begin our analysis by exploring the differences between murder and the lesser offense of manslaughter. Murder is the unlawful killing of a human being with malice aforethought. (Pen. Code, § 187, subd. (a).)[3] Malice may be either express or implied. It is express when the defendant manifests "a deliberate intention unlawfully to take away the life of a fellow creature." (§ 188.) It is implied "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart." (*Ibid.*) This statutory definition of implied malice, we have said, "has never proved of much assistance in defining the concept in concrete terms" (*People v. Dellinger* (1989) 49 Cal.3d 1212, 1217 [264 Cal.Rptr. 841, 783 P.2d 200]), and juries should be instructed that malice is implied "when the killing results from an intentional act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life" (*id.* at p. 1215). As in the companion case of *People v. Lasko,* for convenience we shall describe this mental state as "conscious disregard for life."

■ Manslaughter is "the unlawful killing of a human being without malice." (§ 192.) A defendant lacks malice and is guilty of voluntary manslaughter in "limited, explicitly defined circumstances: either when the

---

[2]The court instructed the jury: "Every person who unlawfully kills a human being without malice aforethought and without an intent to kill is guilty of the crime of involuntary manslaughter in violation of Penal Code section 192(b). [¶] In order to prove such crime, each of the following elements must be proved: [¶] 1. A human being was killed, and [¶] 2. The killing was unlawful. [¶] A killing is unlawful within the meaning of this instruction if it occurred: [¶] 1. During the commission of a misdemeanor which is inherently dangerous to human life, namely, the offense of [b]randishing a [w]eapon; or [¶] 2. In the commission of an act, ordinarily lawful, which involves a high degree of risk of death or great bodily harm, without due caution and circumspection."

[3]All further statutory references are to the Penal Code.

defendant acts in a 'sudden quarrel or heat of passion' (§ 192, subd. (a)), or when the defendant kills in 'unreasonable self-defense'—the unreasonable but good faith belief in having to act in self-defense (see *In re Christian S.* (1994) 7 Cal.4th 768 [30 Cal.Rptr.2d 33, 872 P.2d 574]; *People v. Flannel* [(1979)] 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1])." (*People v. Barton* (1995) 12 Cal.4th 186, 199 [47 Cal.Rptr.2d 569, 906 P.2d 531].) At issue here is the second type of voluntary manslaughter: when a defendant kills in unreasonable self-defense. (The other form of voluntary manslaughter— when the defendant kills in a sudden quarrel or heat of passion—is addressed in the companion case of *People v. Lasko, supra,* 23 Cal.4th 101.)

A person who *intentionally* kills in unreasonable self-defense lacks malice and is guilty only of voluntary manslaughter, not murder. (*People v. Barton, supra,* 12 Cal.4th at p. 199; see also *People v. Breverman* (1998) 19 Cal.4th 142, 154 [77 Cal.Rptr.2d 870, 960 P.2d 1094]; *People v. Saille* (1991) 54 Cal.3d 1103, 1107, fn. 1 [2 Cal.Rptr.2d 364, 820 P.2d 588]; *People v. Flannel, supra,* 25 Cal.3d 668.) But what offense is committed when a person, acting with a conscious disregard for life, *unintentionally* kills a human being, but the killing occurs in unreasonable self-defense? Is the killer guilty of murder, voluntary manslaughter, or involuntary manslaughter?

We have in the past said that in these circumstances the killer is not guilty of murder: "[I]mplied malice is shown when 'the defendant for a base, antisocial motive and with wanton disregard for human life, does an act that involves a high degree of probability that it will result in death.' . . . A defendant who acts with the requisite actual belief in the necessity for self-defense does not act with the base motive required for implied malice, i.e., with 'an abandoned and malignant heart.' [Citation.] A contrary conclusion, namely, that imperfect self-defense applies only in cases of express, but not implied, malice would lead to a totally anomalous and absurd result, in which a defendant, who unreasonably believes that his life is in imminent danger, would be guilty only *of manslaughter* if he acts *with the intent to kill* his perceived assailant, but would be guilty *of murder* if he does *not* intend to kill, but only to seriously injure, the assailant. There is no authority to support such an incongruous rule." (*In re Christian S., supra,* 7 Cal.4th at p. 780, fn. 4, some italics omitted.)

Defendant here asserts that one who unintentionally and unlawfully kills in unreasonable self-defense is guilty only of involuntary manslaughter. We have never before decided whether in these circumstances a defendant is guilty of voluntary or involuntary manslaughter. As we shall explain, we conclude that when a defendant, acting with conscious disregard for life,

unintentionally kills in unreasonable self-defense, the killing is voluntary, not involuntary, manslaughter.

Defendant's claim that an unintentional killing in unreasonable self-defense is involuntary manslaughter is based on the assumption that intent to kill is a necessary element of voluntary manslaughter. As he points out, we have said so in a number of cases. (See, e.g., *People v. Hawkins* (1995) 10 Cal.4th 920, 958 [42 Cal.Rptr.2d 636, 897 P.2d 574]; *People v. Burroughs* (1984) 35 Cal.3d 824, 834, fn. 8 [201 Cal.Rptr. 319, 678 P.2d 894]; *People v. Ray* (1975) 14 Cal.3d 20, 28 [120 Cal.Rptr. 377, 533 P.2d 1017]; *People v. Sedeno* (1974) 10 Cal.3d 703, 720 [112 Cal.Rptr. 1, 518 P.2d 913]; *People v. Forbs* (1965) 62 Cal.2d 847, 852 [44 Cal.Rptr. 753, 402 P.2d 825]; *People v. Gorshen* (1959) 51 Cal.2d 716, 732-733 [336 P.2d 492]; *People v. Bridgehouse* (1956) 47 Cal.2d 406, 413 [303 P.2d 1018].) Relying on these cases, defendant argues that one who unintentionally kills in the exercise of unreasonable self-defense cannot be guilty of voluntary manslaughter because there is no intent to kill. Thus, he asserts, the only remaining possibility is that such persons are guilty of involuntary manslaughter.

In the companion case of *People v. Lasko, supra,* 23 Cal.4th 101, we pointed out that in each of these cases, the statement that voluntary manslaughter requires an intent to kill was mere dictum, and incorrect. As explained in *Lasko,* nothing in the language of subdivision (a) of section 192, which defines voluntary manslaughter, limits its applicability to cases in which the killer harbors an intent to kill. An unlawful homicide committed with malice is murder, whether or not the killer harbors the intent to kill; similarly, there is no valid reason to distinguish between those killings that, absent unreasonable self-defense, would be murder with express malice, and those killings that, absent unreasonable self-defense, would be murder with implied malice.

Defendant invokes the well-established principle of statutory construction that when the Legislature amends a statute without changing those portions of the statute that have previously been construed by the courts, the Legislature is presumed to have known of and to have acquiesced in the previous judicial construction. (*People v. Escobar* (1992) 3 Cal.4th 740, 750-751 [12 Cal.Rptr.2d 586, 837 P.2d 1100]; *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1155-1156 [278 Cal.Rptr. 614, 805 P.2d 873]; *Marina Point, Ltd. v. Wolfson* (1982) 30 Cal.3d 721, 734 [180 Cal.Rptr. 496, 640 P.2d 115, 30 A.L.R.4th 1161].) Defendant points out that between 1945 and 1994 the Legislature has amended section 192 (defining manslaughter) five times. He contends the Legislature's failure to alter this court's "consistent interpretation that voluntary manslaughter requires the intent to kill and involuntary manslaughter does not" shows the Legislature's acquiescence in that interpretation.

We disagree. All of the five amendments to section 192 affect only subdivision (c) of that section, which defines *vehicular* manslaughter. (See Stats. 1994, ch. 71, § 2; Stats. 1986, ch. 1106, § 3, p. 3881; Stats. 1984, ch. 742, § 1, p. 2703; Stats. 1983, ch. 937, § 1, p. 3387; Stats. 1945, ch. 1006, § 1, p. 1942.) The subdivisions of section 192 that define voluntary and involuntary manslaughter have remained unchanged since that section's enactment in 1872. We do not view the Legislature's amendments to subdivision (c), which defines vehicular manslaughter, as persuasive evidence that the Legislature intended to acquiesce in judicial decisions construing subdivision (a), which defines voluntary manslaughter. (See *People v. Morante* (1999) 20 Cal.4th 403, 429 [84 Cal.Rptr.2d 665, 975 P.2d 1071] [declining to infer legislative acquiescence in decision construing one portion of a penal statute from Legislature's amendment of unrelated portion]; *People v. Escobar, supra*, 3 Cal.4th at pp. 750-751 [same].) Moreover, as we explain in the companion case of *People v. Lasko, supra*, 23 Cal.4th at page 110, in each of the decisions in question the observation that intent to kill is an element of voluntary manslaughter was dictum.

Defendant also relies on two decisions by the Court of Appeal, *People v. Glenn* (1991) 229 Cal.App.3d 1461 [280 Cal.Rptr. 609] and *People v. Welch* (1982) 137 Cal.App.3d 834 [187 Cal.Rptr. 511]. In *Glenn*, the defendant testified he intended to stab but not to kill the victim. In reversing the defendant's conviction for voluntary manslaughter, because the trial court had failed to instruct the jury on the lesser included offense of involuntary manslaughter, the Court of Appeal stated: "A person who kills another in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury may be guilty of voluntary or involuntary manslaughter depending on the existence of an intent to kill." (*People v. Glenn, supra*, 229 Cal.App.3d at p. 1467.)

Similarly, in *Welch* the defendant denied intending to kill the victim, who died of gunshot wounds. The Court of Appeal reversed the defendant's conviction for voluntary manslaughter because of the trial court's failure to instruct the jury on the lesser included offense of involuntary manslaughter. The Court of Appeal explained: "The basic distinction in California law between voluntary and involuntary manslaughter is that voluntary manslaughter requires an intent to kill whereas involuntary manslaughter does not. . . . [¶] In the instant case there is substantial evidence from which a jury could conclude that the defendant did not intend to kill [the victim] when he discharged his weapon." (*People v. Welch, supra*, 137 Cal.App.3d at pp. 839-840; see also *People v. Dixon* (1995) 32 Cal.App.4th 1547, 1557, fn. 5 [38 Cal.Rptr.2d 859] ["[I]mperfect self-defense could, depending on the existence of an intent to kill, result in a verdict of voluntary or

involuntary manslaughter."]; *People v. Ceja* (1994) 26 Cal.App.4th 78, 86 [31 Cal.Rptr.2d 475] [" 'A person who kills another in the honest but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury may be guilty of voluntary or involuntary manslaughter depending on the existence of an intent to kill.' "].)

In neither *People v. Glenn, supra*, 229 Cal.App.3d 1461, nor *People v. Welch, supra*, 137 Cal.App.3d 834, did the Court of Appeal engage in any analysis or cite any authority in support of its conclusion that an unintentional killing in unreasonable self-defense can only be involuntary manslaughter. Thus, neither case is persuasive authority for the proposition that intent to kill is necessary for a voluntary manslaughter conviction. For the reasons given earlier, we conclude that when a defendant, acting with a conscious disregard for life, unintentionally kills in unreasonable self-defense, the killing is voluntary rather than involuntary manslaughter.

In his dissenting opinion in this case, Justice Mosk contends that a defendant who kills in unreasonable self-defense may sometimes be guilty of involuntary manslaughter. We have no quarrel with this view. We conclude only that a defendant who, *with the intent to kill or with conscious disregard for life*, unlawfully kills in unreasonable self-defense is guilty of voluntary manslaughter.

### III

■ Does this holding apply retroactively to defendant's case? At oral argument, the Attorney General acknowledged that retroactive application would be unconstitutional. He is right, as we explain.

■ "A statute ' "which makes more burdensome the punishment for a crime, after its commission," ' violates article I, section 9, clause 3, of the United States Constitution as an ex post facto determination of criminal liability [citations], as well as its California counterpart, article I, section 9 of the state Constitution [citation]. Correspondingly, an unforseeable judicial enlargement of a criminal statute, applied retroactively, operates in the same manner as an ex post facto law." (*People v. Davis* (1994) 7 Cal.4th 797, 811 [30 Cal.Rptr.2d 50, 872 P.2d 591]; see also *People v. King* (1993) 5 Cal.4th 59, 80 [19 Cal.Rptr.2d 233, 851 P.2d 27].) Courts violate constitutional due process guarantees (U.S. Const., 5th and 14th Amends.; Cal. Const., art. I, § 7) when they impose unexpected criminal penalties by construing existing laws in a manner that the accused could not have foreseen at the time of the alleged criminal conduct. (*United States v. Lanier* (1997) 520 U.S. 259, 266-267 [117 S.Ct. 1219, 1225-1226, 137 L.Ed.2d 432]; *Marks v. United*

*States* (1977) 430 U.S. 188, 191-192 [97 S.Ct. 990, 992-993, 51 L.Ed.2d 260]; *Bouie v. City of Columbia* (1964) 378 U.S. 347, 353 [84 S.Ct. 1697, 1702, 12 L.Ed.2d 894].)

Here, when defendant killed Vallo this court had not yet addressed the issue of whether an unintentional killing in unreasonable self-defense is voluntary or involuntary manslaughter. But three decisions by the Courts of Appeal in this state held that such a killing was only involuntary manslaughter (*People v. Ceja, supra*, 26 Cal.App.4th 78; *People v. Glenn, supra*, 229 Cal.App.3d 1461; *People v. Welch, supra*, 137 Cal.App.3d 834; see also *People v. Clark* (1982) 130 Cal.App.3d 371, 382 [181 Cal.Rptr. 682]); no case held to the contrary. Thus, our decision today—that one who, acting with conscious disregard for life, unintentionally kills in unreasonable self-defense is guilty of voluntary manslaughter rather than the less serious crime of involuntary manslaughter—is an unforeseeable judicial enlargement of the crime of voluntary manslaughter, and thus may not be applied retroactively to defendant. (See *People v. Davis, supra*, 7 Cal.4th at p. 812 [retroactive application improper when this court overturns consistent decisions by Courts of Appeal narrowly construing criminal statute].)

The Attorney General insists, however, that the trial court did not have to grant defendant's request to instruct the jury that an unintentional killing in unreasonable self-defense was involuntary manslaughter. He points out that although the decisions of the Courts of Appeal, which defendant cited and which we mentioned in the preceding paragraph, hold that an unintentional killing in unreasonable self-defense may constitute involuntary manslaughter, none of them expressly holds that the trial court must, upon request, tailor its instruction on involuntary manslaughter to include mention of an unintentional killing in unreasonable self-defense. We disagree. The need for such a modification is implicit in the conclusion of the Court of Appeal decisions in question that such a killing is involuntary manslaughter. (See *People v. Earp* (1999) 20 Cal.4th 826, 886 [85 Cal.Rptr.2d 857, 978 P.2d 15] ["Upon request, a trial court must give jury instructions 'that "pinpoint[] the theory of the defense . . . ." ' "].)[4]

By contrast, the standard instruction on involuntary manslaughter the trial court gave here did not explain to the jury that a defendant who commits an unintentional killing in unreasonable self-defense is guilty of involuntary manslaughter. As we mentioned earlier, that instruction stated a killing is involuntary manslaughter if committed during "the commission of . . . the

---

[4]We express no view as to whether the trial court would have been required, *in the absence of a request from defendant*, to instruct the jury that an unintentional killing in unreasonable self-defense is involuntary manslaughter.

offense of [b]randishing a [w]eapon; or . . . [i]n the commission of an act, ordinarily lawful, which involves a high degree of risk of death or great bodily harm, without due caution and circumspection." An unintentional killing in unreasonable self-defense, committed in the midst of a fight, does not fall within this definition. We therefore conclude the trial court erred by failing to instruct the jury that an unintentional killing in unreasonable self-defense is involuntary manslaughter.

## IV

Did defendant suffer prejudice from the trial court's failure to instruct the jury that an unintentional killing in unreasonable self-defense is involuntary manslaughter? ■    A majority of this court recently held that when, as in this case, a trial court violates state law by failing to properly instruct the jury on a lesser included offense, the following test applies: "[I]n a noncapital case, error in failing sua sponte to instruct, or to instruct fully, on all lesser included offenses and theories thereof which are supported by the evidence must be reviewed for prejudice exclusively under [*People v.*] *Watson* [(1956) 46 Cal.2d 818, 836 [299 P.2d 243]]. A conviction of the charged offense may be reversed in consequence of this form of error only if, 'after an examination of the entire cause, including the evidence' (Cal. Const., art. VI, § 13), it appears 'reasonably probable' the defendant would have obtained a more favorable outcome had the error not occurred (*Watson, supra*, 46 Cal.2d 818, 836)." (*People v. Breverman, supra*, 19 Cal.4th 142, 178.)

■    Here, although the trial court did not instruct the jury that an unintentional killing in unreasonable self-defense is involuntary manslaughter, it did instruct on these two theories of involuntary manslaughter, neither of which requires an intent to kill: that an unlawful killing is involuntary manslaughter if it occurs during the offense of brandishing a weapon *or* in the commission of an ordinarily lawful act which involves a high degree of risk of death or great bodily harm, without due caution and circumspection. The court also gave CALJIC No. 8.40, the standard instruction defining the elements of voluntary manslaughter, which said that one of the elements of voluntary manslaughter that "must be proved" is that the killing "was done with the intent to kill."[5] Thus, if the jury had concluded that defendant had *unintentionally* killed Vallo in unreasonable self-defense, it most likely

---

[5]As previously explained, in the companion case of *People v. Lasko, supra*, 23 Cal.4th 101, we hold that voluntary manslaughter does not require an intent to kill. Here, defendant does not contend the trial court erred by instructing the jury that intent to kill was required. That error could not have harmed defendant, because it increased the prosecution's evidentiary burden to prove defendant guilty of voluntary manslaughter.

would not have convicted defendant of voluntary manslaughter, which, it was told, requires an intent to kill.

In their closing arguments to the jury, both the prosecutor and defense counsel told the jury that an unintentional killing in unreasonable self-defense was involuntary, not voluntary, manslaughter. The prosecutor said: "Then [the trial court] described to you a middle ground, which is sometimes called imperfect self-defense, but as presented to you was honest and reasonable, reasonable, self-defense. This is a situation where the killer thinks he's in danger of death or great bodily injury, but he's unreasonable in that. And that leads to the manslaughter alternative *which is either voluntary if it's an intentional killing or involuntary if it's not.*" (Italics added.) Defense counsel appeared to make the same point: "Did [defendant] have an intent to kill? *That's the difference between voluntary and involuntary manslaughter,* and the answer there is you have to look at the timing of this and the intoxication of [defendant]. And I submit to you that there was no intent other than the intent to save his life." (Italics added.)

*People v. Watson, supra,* 46 Cal.2d at page 836, requires a *reasonable* probability, not a mere *theoretical* possibility, that the instructional error affected the outcome of the trial. For the reasons given above, we do not find such a reasonable probability here.

### DISPOSITION

The judgment of the Court of Appeal is affirmed.

George, C. J., Baxter, J., Werdegar, J., Chin, J., and Brown, J., concurred.

**MOSK, J.**—I dissent.

I address an "important" question (*People v. Breverman* (1998) 19 Cal.4th 142, 184, fn. 1 [77 Cal.Rptr.2d 870, 960 P.2d 1094] (dis. opn. of Mosk, J.)) that I had heretofore "decline[d] to consider . . . in detail and in depth" (19 Cal.4th at p. 184, fn. 1; accord, *People v. Lee* (1999) 20 Cal.4th 47, 70, fn. 1 [82 Cal.Rptr.2d 625, 971 P.2d 1001] (dis. opn. of Mosk, J.)), namely, the "relationship between" the crimes of "murder and manslaughter" (*People v. Breverman, supra,* 19 Cal.4th at p. 184, fn. 1 (dis. opn. of Mosk, J.); accord, *People v. Lee, supra,* 20 Cal.4th at p. 70, fn. 1 (dis. opn. of Mosk, J.)).

A crime generally comprises elements of mental state and also conduct or consequences or both.

Murder is defined by statute as the "unlawful killing of a human being . . . with malice aforethought." (Pen. Code, § 187, subd. (a).) A killing is

unlawful when it is not justified (see *id.*, §§ 196-198.5, 199), as by self-defense (*id.*, §§ 197-198.5), or excused (see *id.*, §§ 195, 199), as by accident or misfortune (*id.*, § 195). (*People v. Frye* (1992) 7 Cal.App.4th 1148, 1155 [10 Cal.Rptr.2d 217]; see *People v. Thompson* (2000) 79 Cal.App.4th 40, 50 [93 Cal.Rptr.2d 803].)[1] Malice aforethought "may be express or implied." (Pen. Code, § 188.) It is "express" "when there is manifested a deliberate intention unlawfully to take away the life of a fellow creature" (*ibid.*)—when, as we held in *In re Christian S.* (1994) 7 Cal.4th 768, 778 [30 Cal.Rptr.2d 33, 872 P.2d 574], there is a deliberate and "wrongful" intent to kill. It is "implied" "when no considerable provocation appears, or when the circumstances attending the killing show an abandoned and malignant heart" (Pen. Code, § 188)—when, as we put it in *People v. Watson* (1981) 30 Cal.3d 290, 300 [179 Cal.Rptr. 43, 637 P.2d 279], there is a "wanton disregard for human life."

Manslaughter is defined by statute as the "unlawful killing of a human being without malice [aforethought]." (Pen. Code, § 192.) It is "[v]oluntary" when it is perpetrated "upon a sudden quarrel or heat of passion" (*id.*, § 192, subd. (a)) following provocation adequate to arouse a reasonable person (e.g., *People v. Valentine* (1946) 28 Cal.2d 121, 136-144 [169 P.2d 1])—briefly, when it is perpetrated upon "adequate provocation" (e.g., *People v. Rhinehart* (1973) 9 Cal.3d 139, 154 [107 Cal.Rptr. 34, 507 P.2d 642], disapproved on another point, *People v. Bolton* (1979) 23 Cal.3d 208, 213-214 [152 Cal.Rptr. 141, 589 P.2d 396]; *People v. Williams* (1969) 71

---

[1] In subdivision (a) of section 189.5 of the Penal Code, whose predecessor was section 1105 of the same code as originally enacted in 1872, it is stated that, "[u]pon a trial for murder, the commission of the homicide by the defendant being proved, the burden of proving circumstances . . . that justify or excuse it . . . devolves upon the defendant, unless the proof on the part of the prosecution tends to show . . . that the defendant was justifiable or excusable." Contrary to appearances (*People v. Frye, supra*, 7 Cal.App.4th at p. 1154; but see *People v. Cardoza* (1943) 57 Cal.App.2d 489, 494 [134 P.2d 877]), the provision does *not* impose on the defendant any burden of proof, of whatever quantum, as to justification or excuse, but only a burden of producing evidence to raise a reasonable doubt in the premises after the prosecution has itself produced evidence that would support a finding beyond a reasonable doubt (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1214-1215 [275 Cal.Rptr. 729, 800 P.2d 1159]; see *People v. Deloney* (1953) 41 Cal.2d 832, 841 [264 P.2d 532]; *People v. Cornett* (1948) 33 Cal.2d 33, 42-43 [198 P.2d 877]; *People v. Albertson* (1944) 23 Cal.2d 550, 587 [145 P.2d 7]; *People v. Wells* (1938) 10 Cal.2d 610, 621-623 [76 P.2d 493]; *People v. Thompson, supra*, 79 Cal.App.4th at p. 50; *People v. Frye, supra*, 7 Cal.App.4th at p. 1154). This reading of the provision "has long been established" (*People v. Frye, supra*, 7 Cal.App.4th at p. 1154; see *People v. Cornett, supra*, 33 Cal.2d at p. 42), and can hardly be disturbed now. Indeed, any other reading would conflict with the due process clause of the Fourteenth Amendment to the United States Constitution, which requires the state to prove beyond a reasonable doubt every element of a crime, including every underlying fact. (*Sullivan v. Louisiana* (1993) 508 U.S. 275, 277-278 [113 S.Ct. 2078, 2080-2081, 124 L.Ed.2d 182].) The unlawfulness of the killing in question is one of the elements of murder. Its underlying facts include those bearing on the absence of justification and excuse.

Cal.2d 614, 624 [79 Cal.Rptr. 65, 456 P.2d 633]) or, more briefly still, upon "provocation" (e.g., *People v. Jackson* (1980) 28 Cal.3d 264, 305 [168 Cal.Rptr. 603, 618 P.2d 149] (plur. opn. of Richardson, J.); *People v. Morse* (1969) 70 Cal.2d 711, 734 [76 Cal.Rptr. 391, 452 P.2d 607]; 1 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) Crimes Against the Person, § 512, p. 579). It is "[i]nvoluntary" when it is perpetrated (other than in the driving of a vehicle) either "in the commission of an unlawful act, not amounting to a felony" (Pen. Code, § 192, subd. (b)), or "in the commission of a lawful act which might produce death, in an unlawful manner" (*ibid.*), or "without due caution and circumspection" (*ibid.*).

Thus, murder includes among its elements malice aforethought, which is the requisite mental state.

By contrast, in both its voluntary and involuntary forms, manslaughter *excludes* malice aforethought.

For involuntary manslaughter, the requisite mental state is clear from its definition. It is the state of mind that belongs to any underlying nonfelonious "unlawful act" (Pen. Code, § 192, subd. (b)), or that attends the "commission," "in an unlawful manner," "of a lawful act which might produce death" (*ibid.*), or that is indicated by the absence of "due caution and circumspection" (*ibid.*).

For voluntary manslaughter, however, the requisite mental state is not clear from its definition. But it becomes so when voluntary manslaughter is considered in conjunction with murder: It is the state of mind that *amounts in fact* to malice aforethought, but *is deemed in law* not to because of provocation. (See *People v. Doyell* (1874) 48 Cal. 85, 96 [speaking of express malice aforethought, but without limitation thereto]; *People v. Kernaghan* (1887) 72 Cal. 609, 613 [14 P. 566] [following *Doyell*]; *People v. Elmore* (1914) 167 Cal. 205, 210 [138 P. 989] [same]; see also *People v. Freel* (1874) 48 Cal. 436, 437 [similar to *Doyell*].) The premise is that malice aforethought and provocation are always compatible. It is altogether sound. It is true that, in any given case, the actor may or may not be provoked when he forms a deliberate and wrongful intent to kill or proceeds with a wanton disregard for human life. But it is also true that in no case is he disabled by provocation from forming the indicated intent or proceeding with the indicated disregard.

It follows that provocation may be treated as an "element" of voluntary manslaughter, but only—against my former view (see *People v. Lee, supra,* 20 Cal.4th at p. 75, fn. 2 (dis. opn. of Mosk, J.))—when voluntary manslaughter is considered in conjunction with murder. Which is to say, it is

only then that *non*provocation may be treated as an "element" of murder, or more precisely, a "sub-element" of malice aforethought. (Cf. Pen. Code, § 188 [stating that malice aforethought is "implied" "when no considerable provocation appears"].) For provocation can have meaning and effect only when it can reduce malice aforethought to a less culpable mental state.

That nonprovocation may thus be treated as an "element" of murder does not make it one in any proper sense. An element is a legal requirement of a crime. Nonprovocation is not such. Rather, it is a fact that may or may not be raised by the particular evidence admitted at any individual trial. Provocation does not quite function as an affirmative defense to murder, in the sense of constituting a fact that is separate and independent from its elements. But it functions not dissimilarly, albeit with the prosecution bearing the burden of *dis*proof (*People v. Bloyd* (1987) 43 Cal.3d 333, 349 [233 Cal.Rptr. 368, 729 P.2d 802]).

To my mind, the so-called doctrine of imperfect self-defense—which, as we held in *Christian S.* and *People v. Flannel* (1979) 25 Cal.3d 668 [160 Cal.Rptr. 84, 603 P.2d 1], comes into play when an actor "actually, but unreasonably, believe[s] he [is] in imminent danger of death or great bodily injury" (*In re Christian S., supra*, 7 Cal.4th at p. 771, italics omitted; accord, *People v. Flannel, supra*, 25 Cal.3d at pp. 672, 674-680 (lead opn. of Tobriner, J.); *id.* at pp. 686-687 (conc. opn. of Richardson, J.))—does not function like provocation.

Unlike provocation, the doctrine of imperfect self-defense does not find its origin in the statutory definitions of murder and voluntary manslaughter. The fact is plain, and calls for no elaboration. Hence, there is no warrant in statute for any assertion that, for voluntary manslaughter, the requisite mental state is that which *amounts in fact* to malice aforethought, but *is deemed in law* not to because of imperfect self-defense.

Also unlike provocation, the doctrine of imperfect self-defense does not allow the premise that malice aforethought and imperfect self-defense are always compatible.

By its terms, the doctrine of imperfect self-defense, as we held in *Christian S.* and *Flannel*, prohibits an actor's "convict[ion] of" any "crime *greater than voluntary manslaughter.*" (*In re Christian S., supra*, 7 Cal.4th at p. 771, italics added; see *People v. Flannel, supra*, 25 Cal.3d at pp. 672, 674-680 (lead opn. of Tobriner, J.); *id.* at pp. 686-687 (conc. opn. of Richardson, J.).) It does not, however, mandate his conviction of voluntary manslaughter itself. The reason is easy to discern.

If the requisite mental state for voluntary manslaughter is a state of mind that amounts in fact to malice aforethought, an actual, but unreasonable, belief in imminent danger of death or great bodily injury may prove to be preclusive.

For an actor who entertains an actual, but unreasonable, belief in imminent danger of death or great bodily injury may happen not to harbor malice aforethought *express in a deliberate and wrongful intent to kill.* Deliberation or wrongfulness or both may be lacking. To quote *Flannel,* which is categorical in this regard: "[M]alice [aforethought]," including, of course, *express* malice aforethought, "cannot coexist with such [a] . . . belief . . . ." (*People v. Flannel, supra,* 25 Cal.3d at p. 675 (lead opn. of Tobriner, J.); see *id.* at pp. 686-687 (conc. opn. of Richardson, J.).) To quote *Christian S.,* which is similarly categorical: A person "who acts with" an "actual belief in the necessity for self-defense" does not act with the required *wrongful* intent to kill because he "necessarily believes he is acting lawfully." (*In re Christian S., supra,* 7 Cal.4th at pp. 778, 780, fn. 4.) That an actor who entertains an actual, but unreasonable, belief in imminent danger of death or great bodily injury may happen to possess a bare intent to kill is, of course, not enough. Intent to kill *simpliciter* does *not* amount to express malice aforethought, since it is neither deliberate nor wrongful. It scarcely needs mention that intent to kill is not morally culpable in and of itself. In self-defense, it is at least morally neutral. In defense of others, it is perhaps even morally praiseworthy.

Similarly, an actor who entertains an actual, but unreasonable, belief in imminent danger of death or great bodily injury may happen not to harbor malice aforethought *implied in a wanton disregard for human life.* Wantonness, at least, may be lacking. To quote *Flannel*'s categorical statement a second time: "[M]alice [aforethought]," including, of course, *implied* malice aforethought, "cannot coexist with such [a] . . . belief . . . ." (*People v. Flannel, supra,* 25 Cal.3d at p. 675 (lead opn. of Tobriner, J.); see *id.* at pp. 686-687 (conc. opn. of Richardson, J.).) To quote *Christian S.,* which is categorical as well: A person "who acts with" an "actual belief in the necessity for self-defense does not act with the . . . required" wantonness. (*In re Christian S., supra,* 7 Cal.4th at p. 780, fn. 4.)

That an actual, but unreasonable, belief in imminent danger of death or great bodily injury may prove to be preclusive with respect to the mental state required for voluntary manslaughter, namely, a state of mind that amounts in fact to malice aforethought, leads to no untenable result. Surely, it does not grant any immunity to any actor who commits an unlawful killing. For practically by definition, an actor who entertains such a belief

acts "without due caution and circumspection" (Pen. Code, § 192, subd. (b)). Hence, if he is guilty of nothing else, he must be guilty of involuntary manslaughter.

One might perhaps argue that an actor who entertains an actual, but unreasonable, belief in imminent danger of death or great bodily injury necessarily possesses a mental state more culpable than the one indicated by the absence of "due caution and circumspection" (Pen. Code, § 192, subd. (b)) required for involuntary manslaughter. Such an argument would be dubious, inasmuch as the absence of due caution and circumspection describes a state of mind at least approaching recklessness (e.g., *People v. Penny* (1955) 44 Cal.2d 861, 879-880 [285 P.2d 926]). It would also miss the mark. The mental state that voluntary manslaughter requires is one that amounts in fact to malice aforethought. But both *Christian S.* and *Flannel* make plain that an actual, but unreasonable, belief in imminent danger of death or great bodily injury may prove to be preclusive. It does not matter that an actor who entertained such a belief might have, or indeed would have, harbored malice aforethought in its absence. What matters is that he did, in fact, entertain such a belief, and did not, in fact, harbor malice aforethought.[2]

In the case at bar, the superior court erred by refusing to instruct the jury at appellant's request to the effect that the doctrine of imperfect self-defense allowed a verdict finding him guilty of involuntary manslaughter. It did so reversibly. Reversal is required under *People v. Watson* (1956) 46 Cal.2d 818, 837 [299 P.2d 243], when there is a "reasonable probabilit[y]" that the error contributed to the outcome. There is such a reasonable probability when there is "merely a *reasonable chance*, more than an *abstract possibility*," of an effect of this kind. (*College Hospital, Inc. v. Superior Court* (1994) 8 Cal.4th 704, 715 [34 Cal.Rptr.2d 898, 882 P.2d 894], italics in original; see *Aerojet-General Corp. v. Transport Indemnity Co.* (1997) 17 Cal.4th 38, 68 [70 Cal.Rptr.2d 118, 948 P.2d 909].) On my review of the record, which is far from unequivocal regarding the fight between appellant and the victim

---

[2]The majority state that they "have no quarrel with" my "view" that an actor who entertains an actual, but unreasonable, belief in imminent danger of death or great bodily injury may be guilty of involuntary manslaughter. (Maj. opn., *ante*, at p. 91.) They go on to state that such an actor, however, is "guilty of voluntary manslaughter" when he acts "*with the intent to kill or with conscious disregard for life*." (*Ibid.*, italics in original.) For my part, I have no quarrel with their view. So long as the actor is not precluded by his belief from possessing a state of mind that amounts in fact to malice aforethought, and does indeed possess a state of mind of that sort. I understand the majority to refer to implied malice aforethought when they use the phrase "conscious disregard for life." And I understand them to refer to express malice aforethought when they use the phrase "intent to kill." As I have explained in the text, bare intent to kill is not enough for express malice aforethought, since it is neither deliberate nor wrongful.

including the striking of the fatal blow, I am compelled to conclude that there is at least a reasonable chance that the superior court's refusal to instruct the jury on the doctrine of imperfect self-defense and involuntary manslaughter contributed to the jury's verdict finding appellant guilt of voluntary manslaughter.

Appellant's petition for a rehearing was denied July 26, 2000.