[No. B143288. Second Dist., Div. Seven. Oct. 23, 2001.]

THE PEOPLE, Plaintiff and Respondent, v.
JASON VIRAMONTES, Defendant and Appellant.

**COUNSEL**

Robert E. Boyce, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Marc E. Turchin, Acting Assistant Attorney General, Brad D. Levenson and Richard B. Cullather, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BOLAND, J.\***—

### INTRODUCTION

Appellant Jason Viramontes challenges his murder and attempted murder convictions on the ground the trial court erred in refusing to instruct on imperfect self-defense. We conclude the evidence supported an instruction on imperfect self-defense and the trial court erred in failing to so instruct. Given the state of the evidence at trial, the error was not harmless.

### BACKGROUND AND PROCEDURAL HISTORY

On the night of February 13, 1999, Ron Garcia held a party in his garage and yard. About 20 to 30 people were in the dimly lit garage, where a disc jockey played music. Three uninvited guests told Garcia they were members of the Dead End Locos gang. Two of these men were tall, and one of them wore backwards a dark blue or black baseball cap. At trial Garcia tentatively identified appellant as the tall man with the cap.

The party ended when gunfire erupted in the garage, killing Victor Lopez and seriously injuring his brother, Ishmael Lopez. Garcia did not witness the shooting because he had gone to the front yard to speak to police officers who had just stopped at the house, possibly in response to a complaint about noise. He heard one shot, a one- or two-second pause, then nine more shots.

Prosecution witness Amy Pohle testified she was standing by the disc jockey's table near her friend, Tiffany Gotavinas, standing next to appellant. The Lopez brothers came up behind appellant and said, "What the fuck's your problem? Where are you from?" Appellant turned to face the brothers, and Pohle pushed one of the brothers aside in an attempt to move away. Appellant reached toward his waistband, but Pohle did not see a gun. Someone, who Pohle assumed was appellant, said, "Fuck you. Dead End." Two or three seconds later, Pohle heard six gunshots.

Prosecution witness Gotavinas testified a man started an argument with the tall man who had his arm around her waist while she "rapped" to the music near the disc jockey's table. The tall man had light-colored eyes and wore a baseball cap backwards. The two men shoved one another, and a third man tried to break it up. After the man who started the argument

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

pushed the tall man into the disc jockey's table, the tall man pulled out a gun, said "Fuck that. Whittier Dead End Locos," and fired the gun. Gotavinas heard about seven shots. She thought appellant resembled the shooter, but lacked the shooter's light-colored eyes.

Prosecution witness Jesse Munoz told police three members of the Whittier Dead End Locos gang were "hitting people up," when an argument began. A tall man wearing backwards a blue cap and a dark blue windbreaker said, "Yeah, fool, Whittier Varro Dead End," and pulled a gun from the area of his waist. Munoz saw flashes and ducked. He heard seven gunshots. At trial, Munoz denied seeing anything and said he was drunk and the police put words in his mouth. The prosecutor played the tape of Munoz's police interview for the jury.

Ishmael Lopez testified he was standing near the disc jockey's table when someone bumped him from behind. He confronted the apparent culprit, a tall man wearing backwards a baseball cap, and dark clothing; he and the man argued. His brother Victor joined the argument and shoved the tall man. Someone yelled something, and the tall man pulled a gun, extended his arm toward Victor, and fired. Ishmael was shot in the face and arm when he attempted to pull his brother out of the way.

Prosecution witness Albert Lopez knew appellant and knew he belonged to the Dead End Locos. He saw appellant near the disc jockey's table in the area where the scuffle and shooting occurred, but he did not witness the shooting or see any guns. Lopez told police he heard appellant say "Dead End" just before the shooting.

Defense witness Raymond Hernandez saw someone push appellant. That person then faced appellant, drew a gun, and fired at appellant. Hernandez did not see a gun in appellant's possession. He ran after the first shot was fired.

Defense witness Robert Santana was the disc jockey. He saw someone "from the opposite crowd" shoot at appellant.

Defense witness Joseph Merino was outside when the shooting occurred. He testified one to two seconds elapsed between the first shot and the five or six shots that followed. It sounded as if two guns were being fired from opposite sides of the garage.

Pohle, Gotavinas and Munoz selected a photograph of appellant's brother Bryan as that of the shooter. Garcia also picked Bryan's photo as that of the tall gang member wearing a hat.

The police found in the garage a partially loaded magazine for a semi-automatic gun, five expended .9-millimeter casings, and portions of a bullet. Garcia found two more expended .9-millimeter casings the next day.

David Whiteman, a deputy medical examiner, testified Victor Lopez suffered a tight contact gunshot wound to the top of his head. The shot was fired in a downward direction with the barrel of the gun pressed against the skin. Victor also was shot on the side of the head, back of the neck, upper back, and hand. Whiteman recovered four bullets from Victor's body.

The prosecution's firearms expert Bob Hawkins testified the magazine found in the garage was capable of holding 15 rounds and contained eight unfired rounds when he examined it. Casings found in the garage and three bullets recovered during the autopsy were fired by the same gun. The bullet recovered from Victor Lopez's hand, however, was a bullet for a revolver and was fired from a different gun.

Defense ballistics expert Lawrence Baggett testified two bullet holes in the garage wall could not have been made by shots fired from the vicinity of the disc jockey's table. Defense forensic expert Carol Hunter found lead around a hole in a black nylon jacket seized from appellant's home. The hole did not penetrate to the jacket's lining. No stippling, sooting, or gunshot residue was found on the jacket. Fibers on the bullet embedded in Victor Lopez's hand matched the outer cloth of the jacket.

The jury convicted appellant of second degree murder and attempted murder. It also found the firearm use allegations to be true, including allegations that appellant personally and intentionally fired a gun causing Victor's death and Ishmael's serious injury. The court sentenced appellant to a 65-year-to-life indeterminate term plus a 7-year determinate term.

## DISCUSSION

*The trial court erred in refusing to instruct the jury on imperfect self-defense.*

Self-defense requires an actual and reasonable belief in the need to defend against an imminent danger of death or great bodily injury. (*People v. Humphrey* (1996) 13 Cal.4th 1073, 1082 [56 Cal.Rptr.2d 142, 921 P.2d 1].) If, however, the killer actually, but *unreasonably*, believed in the need to defend himself or herself from imminent death or great bodily injury, the theory of "imperfect self defense" applies to negate malice. (*Ibid.*) The crime committed is thus manslaughter, not murder. (*Ibid.*)

The trial court instructed the jury on self-defense, but not imperfect self-defense. The court had included an imperfect self-defense instruction, CALJIC No. 5.17,[1] in its draft set of jury instructions. The prosecutor, however, asked the court not to give CALJIC No. 5.17 because no evidence was offered regarding appellant's "unreasonable belief." Defense counsel argued in favor of a self-defense instruction, but when reminded that the topic was imperfect self-defense, he conceded he had no argument. The court eliminated CALJIC No. 5.17 from the set of instructions, stating, "if the other individual is using a gun and firing on him then it is a complete defense." Defense counsel then asked the court to reconsider its ruling, arguing appellant feared for his life because someone shot at him, as shown by the hole in the outside of his jacket, and fired back. The court declined to reconsider, stating, "So it is not an unreasonable fear. And that is what 5.17 talks about. It is an unreasonable fear. Anybody who is shot at seems to me has a reasonable right to defend himself." Defense counsel concurred with the court's analysis.

 Appellant contends the trial court erred in refusing to instruct on imperfect self-defense, and that the error requires reversal of his convictions. We agree.

 The subjective elements of self-defense and imperfect self-defense are identical. Under each theory, the appellant must actually believe in the need to defend himself against imminent peril to life or great bodily injury. To require instruction on either theory, there must be evidence from which the jury could find that appellant actually had such a belief. This evidence may be present even though appellant did not testify or make a statement admitted at trial. (*People v. De Leon* (1992) 10 Cal.App.4th 815, 824 [12 Cal.Rptr.2d 825].) If the trier of fact finds the requisite belief in the need to defend against imminent peril, the choice between self-defense and imperfect self-defense properly turns upon the trier of fact's evaluation of the reasonableness of appellant's belief. Accordingly, if the evidence is sufficient to support instruction on self-defense, it is also sufficient to support instruction on imperfect self-defense. (*People v. Ceja* (1994) 26 Cal.App.4th

---

[1]CALJIC No. 5.17 provides, "A person, who kills another person in the actual but unreasonable belief in the necessity to defend against imminent peril to life or great bodily injury, kills unlawfully, but does not harbor malice aforethought and is not guilty of murder. This would be so even though a reasonable person in the same situation seeing and knowing the same facts would not have had the same belief. Such an actual but unreasonable belief is not a defense to the crime of [voluntary] [or] [involuntary] manslaughter. [¶] As used in this instruction, an 'imminent' [peril] [or] [danger] means one that is apparent, present, immediate and must be instantly dealt with, or must so appear at the time to the slayer. [¶] [However, this principle is not available, and malice aforethought is not negated, if the defendant by .[his] [her] [unlawful] [or] [wrongful] conduct created the circumstances which legally justified [his] [her] adversary's [use of force], [attack] [or] [pursuit].]"

78, 90 [31 Cal.Rptr.2d 475] (conc. opn. of Johnson, J.), disapproved on another ground in *People v. Blakely* (2000) 23 Cal.4th 82 [96 Cal.Rptr.2d 451, 999 P.2d 675].)

 The evidence supported instruction on both self-defense and imperfect self-defense. Defense witnesses Hernandez and Santana testified they saw someone shoot at appellant first. This testimony was supported by undisputed forensics evidence establishing the use of two guns, with at least one shot fired from one gun and at least seven shots fired from the other gun. Numerous witnesses described hearing a pause between the first shot and subsequent shots, and Merino testified it sounded as if two different guns were firing from different areas in the garage. If the jury believed these witnesses, it could find appellant had an actual belief that he was in imminent peril and that lethal force was necessary to defend himself against the person who shot at him. Such a belief would appear to be objectively reasonable if one looked only to Hernandez's and Santana's testimony.

However, other evidence and matters on which there was no evidence created a more confusing story. None of the prosecution witnesses testified that someone fired at appellant, and apparently no gun was found in the victims' possession or near their bodies. The odd bullet came to rest in Victor Lopez's hand, but fiber evidence showed that it apparently first struck the outer surface of the jacket found in appellant's home. While it was not clear appellant wore the jacket at the time of the shooting, it is more or less consistent with a description of the shooter's attire given by Ishmael Lopez and Jesse Munoz. Defense ballistics expert Baggett opined that two shots that struck the garage walls could not have been fired from the area near the disc jockey's table where appellant and the Lopez brothers argued and scuffled. Because no bullets were recovered from those holes in the wall, no one knows whether one of the two guns known to be involved or yet another gun made them. Thus, what really happened at the party remains uncertain. The jury could have concluded that someone in the garage fired a shot— perhaps accidentally—that grazed appellant's jacket before striking Victor Lopez, causing appellant to believe one of the Lopez brothers, with whom he had been arguing, had escalated the battle by shooting at him. If the jury believed the shot was fired by someone other than one of the Lopez brothers, especially if the jury believed the shot was fired from a different area of the garage, it could have found appellant's belief in the need to defend himself against the Lopez brothers to be unreasonable. Thus, the jury could have found a factual basis for imperfect self-defense.

The trial court's failure to instruct on imperfect self-defense cannot be deemed harmless. Although the instructions permitted the jury to find manslaughter on a heat of passion or sudden quarrel theory, the court is required

to instruct on all theories of a lesser included offense that find substantial support in the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 162 [77 Cal.Rptr.2d 870, 960 P.2d 1094].) The jury's rejection of a heat of passion theory therefore is irrelevant to the potential success of an imperfect self-defense theory. Similarly, the jury's rejection of appellant's self-defense theory does not reveal which of the two elements, the actual belief in the need to defend himself or the reasonableness of that belief, the jury rejected. Given the testimony that someone shot at appellant first, together with the undisputed evidence that two guns were used and a bullet from one gun struck a jacket that appellant may have been wearing at the time of the shooting, we believe there is a reasonable probability that a properly instructed jury would have found appellant guilty of manslaughter on an imperfect self-defense theory. (*Id.* at p. 178.)

■ Respondent argues appellant invited the error because defense counsel agreed with the court and prosecutor that there was no factual basis for instructing on imperfect self-defense. The doctrine of invited error generally precludes reversal on appeal for an error the trial court made at the behest of the accused. (*People v. Wickersham* (1982) 32 Cal.3d 307, 330 [185 Cal.Rptr. 436, 650 P.2d 311], disapproved on other grounds in *People v. Barton* (1995) 12 Cal.4th 186, 201 [47 Cal.Rptr.2d 569, 906 P.2d 531].) It applies only to tactical choices by the defense. (*People v. Cooper* (1991) 53 Cal.3d 771, 831 [281 Cal.Rptr. 90, 809 P.2d 865].) Because the trial court is required to correctly instruct the jury, invited error applies to an omitted instruction only if it is clear from the record that defense counsel made an express objection to the instruction in issue. (*People v. Wickersham, supra,* 32 Cal.3d at p. 330.)

The prosecutor, not defense counsel, objected to the imperfect self-defense instruction. Indeed, defense counsel asked the trial court to reconsider its decision to remove CALJIC No. 5.17 from the set of instructions. Although defense counsel failed to argue vigorously or persuasively in support of the instruction and ultimately expressed agreement with the court's reasoning, counsel in no sense *caused* the trial court to omit the instruction. Moreover, the weakness of defense counsel's efforts to persuade the court to give the instruction cannot be viewed as a tactical choice. Counsel appeared to be confused about which instruction was in issue and at a loss to explain how the theory of imperfect self-defense fit into the case. Appellant cannot be deemed to have invited the instructional error.

Given our position on this issue, we need not address appellant's other contentions.

## DISPOSITION

The judgment is reversed and the cause is remanded.

Lillie, P. J., and Johnson, J., concurred.

A petition for a rehearing was denied November 21, 2001, and the opinion was modified to read as printed above.