Filed 3/18/14  P. v. Phan CA2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>TOAN PHAN,<br><br>    Defendant and Appellant. | 2d Crim. No. B245839<br>(Super. Ct. No. KA094441-01)<br>(Los Angeles County) |

Toan Phan appeals a judgment after conviction by jury of second degree murder.  (Pen. Code, §§ 187, subd. (a), 189.)  The jury found true allegations that he personally and intentionally used and discharged a firearm.  (*Id.*, 1203.06, subd. (a)(1), 12022.5, subd. (a), 12022.53, subds. (b), (c) & (d).)  The trial court sentenced Phan to 40 years to life in state prison.

Phan contends the trial court should have instructed the jury on voluntary manslaughter, under theories of imperfect self-defense and heat of passion; it did not sufficiently respond to a jury question; it should have instructed on accident and misfortune; and it erroneously admitted evidence of his fraudulent financial activities.  He also contends his trial counsel rendered ineffective assistance by not requesting a heat of passion instruction and not reminding the trial court to give an accident instruction that it said it would give.  We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Phan and Phuc Hong Tina Nguyen were romantic partners from 2007 until about January 2010. In June 2010, Phan went to Vietnam and married another woman. He returned on July 10.

On July 17, 2010, at about 5:00 a.m., Phan called 911 from his apartment and said, "Two people die here. I shoot, she shoot me, I shoot her." When sheriff's deputies arrived, Phan was on the floor behind the front door with a gunshot wound through his chest. Nguyen's body was in the bedroom with a bullet wound in her upper left chest.

A revolver and a semi-automatic pistol were on the bed near Nguyen. The bullet inside Nguyen's chest was fired from the revolver. Another bullet found in the bedroom was also fired from the revolver. A fired cartridge case in the bedroom was from the pistol. There was a bullet hole in the ceiling above Nguyen and another through the window blinds.

Nguyen had a small bruise on the back of her left middle finger and no other bruises. Her fingernails were unbroken. Nothing in the room appeared to be disturbed or broken. Nguyen had gunshot residue on both hands.

An expert testified that the revolver was probably in contact with Nguyen's skin or clothing when it was fired, because the entry wound had soot around it and the wound was seared without stippling. The expert testified that the revolver could not accidentally fire because of built-in safety features. He said that it was "double-action" and "you have to actually have a deliberate act to pull it, because on double-action mode, it cannot really have accidental discharge . . . because it takes so much effort to pull all the way to the rear."

Phan's handwritten note was in the living room. In a portion addressed to Nguyen, Phan expressed his love and said, "I only regret one thing, that we cannot become husband and wife so that we can live the whole life together forever. Live together, the whole life. So then therefore I would hope for the next life. In case there is a next life, I

2

will be doing much better and we will be able to become husband and wife, living together in the better way."[1]

In another portion of the note, Phan wrote to his first wife: "I'm at fault towards you and my child. Please try to make sure that our child will be successful in life so that the child will not be in a position like I am."

Phan wrote to his child, "[W]hen you will be reading those lines, I would be no longer with you. I hope you will forgive me. I am a father that has not fulfilled his duty or responsibility. I do not deserve to be your father. Please help your mom for the chores at home, and be successful in life. Over there in the other world I will be thankful to you."

Phan wrote to his brother, "Brother Tu, everything that occurred or happened, it's my fault. Just blame everything on me." He also wrote "to every [person] that would still be alive after [he] passed away," "Do not worry or do not be bothered by the fact that I am no longer here anymore. Farewell to everybody or goodbye to everybody."

Phan testified that he wrote the note during the two days before Nguyen died. He was feeling depressed and suicidal when he wrote it.

The trial court admitted the note and evidence of Phan's past financial misconduct, over defense objection.

*Evidence of Financial Fraud and Debt*

Phan's brother Tu Phan testified that three or four months before Nguyen was shot, Tu reported Phan to the police for fraud. Phan obtained a credit card in Tu's name in 2009 without his permission and accumulated about $14,000 to $15,000 in debt. When Tu first confronted Phan, Phan agreed to pay the debt. But Phan later opened two more accounts in Tu's name. Phan missed payments and Tu reported him to the police a few months before Nguyen died. In March or April 2010, Tu spoke to Phan by telephone in Vietnam. Phan said he was sorry. Tu told Phan to call Detective Reyes of the West Covina police to talk to him about the police report.

Detective Reyes testified that Phan called him on July 9, 2010 (eight days before Nguyen died). Phan told Reyes that he needed a couple of weeks before he could be

---

[1] Phan wrote the note in Vietnamese. He translated it during his testimony.

3

interviewed about the matter, because he had just returned from Vietnam and needed to settle some business. Nguyen's mother testified that Phan owed her $2,000. A few days before Nguyen died, she confronted Phan about the debt.

The trial court instructed the jury that evidence of Phan's other crimes was admitted for the limited purpose of proving motive for the charged crime.

*Phan's Testimony*

Phan testified that on July 16, 2010, he was depressed because he could not find a job or make payments on the credit cards he opened in Tu's name. He wrote the note, and then took out his semi-automatic pistol because he intended to kill himself. He changed his mind and shot the ceiling. He left the pistol on the floor or on a table. The revolver was in a drawer under his bed.

Phan had chest pains, so he went to the hospital. The hospital discharged him, and Nguyen drove him home.

On the way back to his apartment, Nguyen was angry about his new wife. In Phan's bedroom, she demanded $4,600 and became upset with him because he said he did not have it. Nguyen was sitting on the bed. Phan was standing.

When Phan turned around, he saw that Nguyen was pointing the revolver at him, holding it with both hands. He did not see her get it from under the bed.

Phan said to Nguyen, "You don't know how to use a gun. Don't play with a gun." They were six feet apart. He moved toward her and said, "Give me the gun." He "heard a noise, boom, and then [his] chest hurt."

After Nguyen shot Phan in the chest, he "was still moving forward towards her." He was "able to hold onto the hands -- hold onto the gun." Nguyen was still sitting on the bed, and he was standing.

Phan testified, "I think there was a struggle there. Then prior to me passing out, the gun was pointing towards her direction. Before I fell--before I fell down and passed out, I know that I did shoot toward that direction. And I passed out." He did not remember calling 911.

4

Phan testified that his past relationship with Nguyen was volatile. They broke up six or seven times between 2007 and 2010. They argued because Nguyen had a gambling problem. He said that in 2008 a neighbor called him at work about noise coming from their home. When he arrived, Nguyen was breaking things. Phan called the police. When the police arrived, Nguyen stopped.

*Instructions*

The trial court instructed the jury on murder in the first and second degree and self-defense. After an off-the-record discussion, the court told counsel, "I'll also give, based upon the substantial evidence that has been presented here, accident and misfortune." The court did not give the instruction.

The trial court did not instruct on any theory of manslaughter. The court refused defense counsel's request for a voluntary manslaughter instruction under a theory of imperfect self-defense, because there was no substantial evidence that Phan's belief in the need of self-defense, although actual, was unreasonable. "[B]ased upon the defendant's own statements under oath, it appears that the crime--or that the homicide, if not murder, was justifiable--or excusable, that is, under accident and misfortune. Consequently, I am going to give that instruction. However, I am also giving actual self-defense instructions based upon the 911 call which I find has substantial evidence warranting a self-defense. 'She shot me. I shot her.'"

Defense counsel did not request a voluntary manslaughter instruction based on heat of passion or sudden quarrel. The prosecutor and defense counsel each said they had no objections to the trial court's proffered instructions.

The prosecutor argued that Phan shot Nguyen first and then shot himself, and that first degree murder was the only correct verdict under the evidence. Defense counsel argued Phan acted in self-defense. He said that Nguyen shot Phan first and "[Phan] was able to turn the gun around and shoot at her. Any reasonable person would have done the same thing that Mr. Phan did."

5

*Jury Request for Clarification*

The jurors wrote a note during deliberations: "We need more clarification on 1st degree murder. In [premeditation] how the term[s] 'Rash impulse/Heat of passion" effect or impact . . . 1st degree murder. 'What qualifies as [premeditation]. What to be the time interval for [premeditation] [*sic*].'" The court re-read CALJIC No. 8.20 concerning premeditation, ". . . The true test is not the duration of time, but rather the extent of reflection. A cold, calculated judgment and decision may be arrived at in a short period of time, but a mere unconsidered and rash impulse, even though it includes an intent to kill, is not deliberation and premeditation as will fix an unlawful killing as murder of the first degree." Soon afterward, the jury returned a verdict of second degree murder. It found true allegations that Phan personally used and personally and intentionally discharged a firearm.

DISUSSION

*Voluntary Manslaughter Instruction*

A trial court must instruct on general principles of law relevant to the issues raised by the evidence. (*People v. Booker* (2011) 51 Cal.4th 141, 181.) "It is error for a trial court not to instruct on a lesser included offense when the evidence raises a question whether all of the elements of the charged offense were present, and the question is substantial enough to merit consideration by the jury." (*Ibid.*) Voluntary manslaughter is a lesser-included offense of murder. (*Ibid.*) We independently review whether a trial court should have instructed concerning a lesser-included offense. (*Ibid.*) We must resolve doubts regarding the sufficiency of evidence to warrant a lesser-included offense instruction in favor of the defendant. (*People v. Tufunga* (1999) 21 Cal.4th 935, 944.)

There was no substantial evidence of imperfect self-defense. Murder may be reduced to voluntary manslaughter under a theory of imperfect self-defense. "Imperfect self-defense is the killing of another human being under the actual but unreasonable belief that the killer was in imminent danger of death or great bodily injury." (*People v. Booker*, *supra*, 51 Cal.4th 141, 182.) "Such a killing is deemed to be without malice and thus cannot be murder." (*Ibid.*)

6

Where there is evidence of actual belief in the need for self-defense, and there is an issue as to the reasonableness of that belief, the trial court should instruct on imperfect self-defense. (*People v. Viramontes* (2001) 93 Cal.App.4th 1256, 1262, 1263-1264 [testimony and physical evidence could support a finding that the defendant unreasonably believed the victims shot at him when someone else actually shot at him].) But where, as here, the evidence does not raise an issue concerning reasonableness, it is not error to refuse the instruction, even if the court instructs on self-defense. (*People v. Valenzuela* (2011) 199 Cal.App.4th 1214, 1231-1232; *People v. Rodriguez* (1997) 53 Cal.App.4th 1250, 1270 ["[J]ust because the court permitted instructions on perfect self-defense [did] not mean that substantial evidence supported the giving of an imperfect self-defense instruction"].)

Phan testified that Nguyen pointed the revolver at him and shot him in the chest. If true, there was no issue concerning the reasonableness of his belief that he was in imminent danger of death or great bodily injury at Nguyen's hands. This case is similar to *People v. Valenzuela*, *supra*, 199 Cal.App.4th 1214, in which the defendant testified that he believed people were shooting at him. There was no issue concerning the reasonableness of his belief that he was in imminent danger and the court did not err when it refused to instruct on imperfect self-defense. "'Where, as here, the defendant's version of events, if believed, establishes actual self-defense, while the prosecution's version, if believed, negates both actual and imperfect self-defense, the court is not required to give the [imperfect self-defense] instruction.'" (*Id*. at p. 1232, quoting *People v. Szadziewicz* (2008) 161 Cal.App.4th 823, 834.) Imperfect self-defense was not supported under any version of the evidence here.

There was also no substantial evidence of heat of passion or sudden quarrel. The trial court is required to instruct on all theories of a lesser-included offense that find substantial support in the evidence. (*People v. Breverman* (1998) 19 Cal.4th 142, 162.) The crime of murder may be reduced to voluntary manslaughter if the victim engaged in provocative conduct that would cause an ordinary person with an average disposition to act rashly or without due deliberation and reflection. (*People v. Enraca* (2012) 53 Cal.4th 735, 759.) "Objectively, the victim's conduct must have been sufficiently provocative to cause an

7

ordinary person of average disposition to act rashly or without due deliberation and reflection." (*Ibid.*) Subjectively, the accused must be shown to have killed while under the actual influence of a strong passion induced by such provocation. (*Ibid.*) "When there is no evidence the offense committed was less than that charged, the trial court is not required to instruct on the lesser included offense." (*People v. Booker*, *supra*, 51 Cal.4th 141, 181.)

Phan testified that he was suicidal and depressed, but Nguyen did not provoke this condition and his feelings persisted over a period of days before he shot her. He testified that she was "angry" and "mad" that he was married and that he would not give her money, but he did not describe himself as angry or upset. He said she shot at him, but he described a rational response. A heat of passion instruction is not required every time that "a defendant is attacked and consequently fears for his life." (*People v. Moye* (2009) 47 Cal.4th 537, 555.) There was no circumstantial evidence that Nguyen so provoked Phan that "emotion . . . obliterate[d] [his] reason." (*People v. Johnston* (2003) 113 Cal.App.4th 1299, 1311.) "[I]n a murder case, unless the People's own evidence suggests that the killing may have been provoked or in honest response to perceived danger, it is the *defendant's* obligation to proffer some showing on these issues sufficient to raise a reasonable doubt of his guilt of murder." (*People v. Rios* (2000) 23 Cal.4th 450, 461-462.) The substantial evidence requirement applies to heat of passion. (*People v. Flood* (1998) 18 Cal.4th 470, 481-482 ["Of course, if the asserted error consists of a failure to instruct on a lesser included offense, there must have been substantial evidence from which a jury reasonably could conclude that the defendant was guilty of the lesser offense, but not the greater offense"].) No substantial evidence supported a voluntary manslaughter instruction here and counsel did not render ineffective assistance when he did not request a heat of passion instruction.

*Response to Jury Question*

Phan contends that the trial court should have instructed on voluntary manslaughter in response to the jury's questions. We disagree.

The jury asked for clarification "on 1st degree murder," how the terms "heat of passion" and "rash impulse" in CALJIC No. 8.20 (first degree deliberate and premeditated murder) impact the question of degree, and what time interval qualifies as premeditation.

8

Counsel did not offer a response and did not object when the trial court said it would not clarify the terms or give a voluntary manslaughter instruction. It is apparent from the verdict that the jury decided Phan killed Nguyen intentionally, but did not premeditate the killing.

Counsel did not render ineffective assistance. The terms "heat of passion" and "rash impulse" in the premeditation instruction do not ordinarily require further definition and do not require instructions on voluntary manslaughter if the evidence does not support that theory. (*People v. Cole* (2004) 33 Cal.4th 1158, 1217-1218.) The evidence did not support a heat of passion theory.

### Accident and Misfortune Instruction

The trial court indicated it would give an accidental instruction, but did not. The omission was not error. Counsel did not request the instruction. The court has no sua sponte duty to instruct on accident. (*People v. Anderson* (2011) 51 Cal.4th 989, 997-998.) Counsel's performance was not deficient because the evidence did not support an accident instruction and counsel made a reasonable tactical decision to pursue a theory that was inconsistent with accident. (*Strickland v. Washington* (1984) 466 U.S. 668, 687-688.)

The evidence was overwhelming that the revolver could not be accidentally discharged. Phan testified that he grabbed Nguyen's hands and the revolver, but he did not testify that it accidentally discharged. He said he turned the revolver toward her and said, "I know that I did shoot toward that direction." The defense theory was inconsistent with accidental discharge. Counsel argued, "[Phan] was able to turn the gun around and shoot at her. Any reasonable person would have done the same thing that Mr. Phan did." Even if an accident instruction were supported by the evidence, its omission would be harmless because the jury found that Phan intentionally discharged the firearm.

### Evidence of Financial Fraud and Debt

Phan contends that evidence that he opened credit cards in his brother's name and accumulated debt was irrelevant because it had nothing to do with the homicide charge and it unfairly depicted him as a person with a criminal disposition. We disagree. The evidence was admissible to prove motive.

9

Evidence of prior bad acts is admissible to prove motive. (Evid. Code, § 1101, subd. (b).) We review the decision to admit the evidence for abuse of discretion. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.) The trial court did not abuse its discretion when it concluded that the evidence was relevant to prove that "since [defendant] could not have the victim in this life, he would have the victim in the next" and that "the [world was] crashing down upon the defendant being discovered in a crime, apparently the victim in this matter not being receptive to defendant's romantic impulses; and that defendant wanted to take his [own] life." Credit card fraud is not similar to murder, but similarity was irrelevant to the inference to be drawn. (*People v. Thompson* (1980) 27 Cal.3d 303, 319, fn. 23, overruled on another ground in *People v. Scott* (2011) 52 Cal.4th 452, 471-472.) Motive can be proven by dissimilar crimes. (*People v. Walker* (2006) 139 Cal.App.4th 782, 804.)

Phan points out that evidence of a defendant's poverty or indebtedness is generally inadmissible to prove motive to commit theft because the evidence may put a poor person under unfair suspicion. (*People v. McDermott* (2002) 28 Cal.4th 946, 999; *People v. Hogan* (1982) 31 Cal.3d 815, 854, overruled on another ground in *People v. Cooper* (1991) 53 Cal.3d 771, 836.) But here the evidence did not raise such concerns because there was a direct link between Phan's financial fraud and the state of mind that led him to shoot himself and Nguyen. The trial court did not err when it admitted the evidence to prove motive.

### *Cumulative Error*

We reject Phan's contentions and conclude there was no cumulative error.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


GILBERT, P.J.

We concur:


YEGAN, J.


PERREN, J.

10

Ronald S. Coen, Judge

Superior Court County of Los Angeles

_____

Lynda A. Romero, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Linda C. Johnson, Supervising Deputy Attorney General, Blythe J. Leszkay, Deputy Attorney General, for Plaintiff and Respondent.